UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FRANKIE THOMAS, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF FRANK THOMAS, SR., DECEASED, ANTHONY THOMAS, KARLIE DENNIS, EDITH THOMAS NEVEAUX, AND KERRY THOMAS, | § § § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § § | CASE NO. _____ |
| SSC MISSOURI CITY OPERATING COMPANY, LLC, REGENCY IHS OF WINDSOR QUAIL VALLEY, LLC, and REGENCY INTEGRATED HEALTH SERVICES, LLC, | § § § § § § § | |
| Defendants. | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs FRANKIE THOMAS, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF FRANK THOMAS, SR., DECEASED, ANTHONY THOMAS, KARLIE DENNIS, EDITH THOMAS NEVEAUX, and KERRY THOMAS, (collectively, "Plaintiffs") and bring this action against Defendants SSC MISSOURI CITY OPERATING COMPANY, LLC, REGENCY IHS OF WINDSOR QUAIL VALLEY, LLC, and REGENCY INTEGRATED HEALTH SERVICES, LLC (collectively, "Defendants") seeking actual damages for medical negligence that resulted in severe injuries and the untimely death of Frank Thomas, Sr.

### I. SUMMARY OF CASE

This is a case about the inexcusable neglect of Plaintiffs' father, Frank Thomas, Sr. Mr. Thomas was a long-term resident at First Colony Health and Rehabilitation Center due to his progressing dementia. Because of his medical condition, Mr. Thomas was at a high risk for

developing pressure ulcers.  In February 2016, Mr. Thomas developed two pressure ulcers on his right buttocks that eventually progressed to two separate Stage II wounds.  Mr. Thomas was hospitalized at Houston Methodist Sugarland Hospital in late February 2016 and discharged to Windsor Quail Valley Post-Acute Healthcare in early March 2016.   Unfortunately, the medical and nursing staff in Windsor Quail Valley failed to closely monitor his pressure ulcers or provide the necessary treatment for the wounds.  As a result, by August 2016 Mr. Thomas's pressure ulcers had dramatically worsened into a single, severe, Stage IV wound.  In addition, Mr. Thomas's wound was infected, and the infection had developed osteomyelitis, which is a life-threatening infection of the bone.  Although Mr. Thomas was hospitalized numerous times at various medical facilities, and underwent numerous medical procedures, he was never able to recover from his wounds.  In early November 2016, Mr. Thomas was transferred to inpatient hospice care.  Mr. Thomas died on December 22, 2016.  His death certificate lists osteomyelitis as the underlying cause of his death.

## II.  THE PARTIES

1. Plaintiff Frankie Thomas is an individual who resides in and is a citizen of Texas. Plaintiff is a surviving daughter of Frank Thomas, Sr., Decedent, and brings this lawsuit individually, as a wrongful-death action, and as a survival action as the representative of the Estate of Decedent.

2. Frank Thomas, Sr., deceased ("Decedent") would have been entitled to bring a suit for damages had he lived.

3. Plaintiff Anthony Thomas is an individual who resides in and is a citizen of Texas. Plaintiff is a surviving child of Frank Thomas, Sr., Decedent, and brings this lawsuit individually, as a wrongful-death action as a surviving child and statutory beneficiary of Decedent.

4.     Plaintiff Karlie Dennis is an individual who resides in and is a citizen of Texas. Plaintiff is a surviving child of Frank Thomas, Sr., Decedent, and brings this lawsuit individually, as a wrongful-death action as a surviving child and statutory beneficiary of Decedent.

5.     Plaintiff Edith Thomas Neveaux is an individual who resides in and is a citizen of Texas. Plaintiff is a surviving child of Frank Thomas, Sr., Decedent, and brings this lawsuit individually, as a wrongful-death action as a surviving child and statutory beneficiary of Decedent.

6.     Plaintiff Kerry Thomas is an individual who resides in and is a citizen of Texas. Plaintiff is a surviving child of Frank Thomas, Sr., Decedent, and brings this lawsuit individually, as a wrongful-death action as a surviving child and statutory beneficiary of Decedent.

7.     Defendant SSC Missouri City Operating Company, LLC is a limited liability company incorporated in Delaware with its principal place of business located at One Ravinia Drive, Suite 1500, Atlanta, Georgia 30346. During the relevant time, Defendant operated, managed, and/or controlled the First Colony Health and Rehabilitation Center skilled nursing facility located at 4710 Lexington Blvd., Missouri City, Texas 77459 ("First Colony"). This Defendant may be served with process through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

8.     Defendant Regency IHS of Windsor Quail Valley, LLC is a limited liability company incorporated in Delaware with its principal place of business located at 1422 Clarkview Road, Baltimore, Maryland 21209. During the relevant time, Defendant operated, managed, and/or controlled the Windsor Quail Valley Post-Acute Healthcare skilled nursing facility located at 3640 Hampton Drive, Missouri City, Texas 77459 ("Windsor Quail Valley"). This

Defendant may be served with process through its registered agent, TRAC – the Registered Agent Company, 815 Brazos Street, Suite 500, Austin, Texas 78701.

9. Defendant Regency Integrated Health Services, LLC is a limited liability company incorporated in Delaware with its principal place of business located at 1422 Clarkview Road, Baltimore, Maryland 21209. During the relevant time, Defendant operated, managed, and/or controlled the Windsor Quail Valley skilled nursing facility. This Defendant may be served with process through its registered agent, TRAC – the Registered Agent Company, 815 Brazos Street, Suite 500, Austin, Texas 78701.

### III. JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction over this cause the Plaintiffs' state-law claims under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 exclusive of interest and costs and Plaintiffs and Defendants are citizens of different states.

11. This Court has general and specific personal jurisdiction over all Defendants because Defendants have established minimum contacts with the State of Texas and the Court's exercise of jurisdiction comports with traditional notions of fair play and substantial justice.

12. Under 28 U.S.C. § 1391(b), venue is proper in this Court because a substantial part of the events or omissions giving rise to Plaintiffs' causes of action occurred in whole or in part in this district.

### IV. FACTS APPLICABLE TO ALL COUNTS

13. Frank Thomas, deceased, was first admitted into First Colony as a long-term resident in April 2012 due to his progressing dementia.

14. During his residency in First Colony, Mr. Thomas was at a high risk of developing pressure ulcers. Due to his dementia, Mr. Thomas required nursing assistance with most of his activities of daily living, including bathing, grooming, and eating. In addition, he

was wheelchair bound and required assistance transferring between his bed and a wheelchair.

15. Mr. Thomas's combined medical conditions, lack of mobility, and compromised cognitive status required the medical and nursing staff at First Colony to closely monitor his skin for breakdown and closely monitor his diet and food intake to ensure that he received sufficient nutrition to guard against skin breakdown. In addition, the medical and nursing staff were required to implement pressure ulcer preventative measures to ensure that Mr. Thomas did not develop any pressure ulcers.

16. Even though First Colony's medical and nursing staff knew of Mr. Thomas's increased risk of developing skin breakdown and pressure ulcers, he was not closely monitored or evaluated, and the facility failed to put in place the necessary measures to prevent the development of pressure ulcers. As a result, by February 2016 Mr. Thomas had developed two separate pressure ulcers on his right buttocks.

17. On February 29, 2016, Mr. Thomas was transferred to Houston Methodist Sugarland Hospital after experiencing elevated blood pressure for the prior three days. At the hospital, Mr. Thomas was evaluated and diagnosed with a stroke and a non-ST-segment elevation myocardial infarction (heart attack). In addition, Mr. Thomas's physicians discovered that the pressure ulcers on his buttocks had progressed to two separate Stage II pressure ulcer wounds. Mr. Thomas remained hospitalized until March 9, 2016, at which time he was released and transferred to a different skilled nursing facility, Windsor Quail Valley.

18. Upon his admission into Windsor Quail Valley, Mr. Thomas was at an extremely high risk of developing new pressure ulcers and having his existing pressure ulcers worsen if the required treatment measures were not implemented. Not only was he wheelchair bound and dependent upon the nursing staff to assist him with all of his activities of daily living, but his recent stroke, heart attack, and hospitalization had rendered him with profound left-sided

weakness, he was significantly deconditioned, and he was unable to move without assistance.

19. However, as with the previous facility, even though the medical and nursing staff at Windsor Quail Valley knew of Mr. Thomas's increased risk of developing pressure ulcers and infections, his skin condition was not closely monitored or evaluated, the facility failed to aggressively treat the existing pressure wounds on his buttocks, and the facility failed to put in place the necessary measures to prevent the development of additional pressure ulcers. As a result, by summer of 2016, Mr. Thomas's two pressure ulcers had dramatically increased in size into one large pressure ulcer on his sacrum (lower back).

20. Despite this, the medical and nursing staff at Windsor Quail Valley continued to neglect Mr. Thomas's care and treatment - he was not closely monitored or evaluated, the facility failed to put in place the necessary measures to prevent the worsening of his pressure ulcer, and the facility failed to closely supervise Mr. Thomas's hydration and nutritional needs.

21. By late August 2016, Mr. Thomas's pressure ulcer had worsened into a severe, Stage IV wound that was foul smelling and infected.

22. On August 29, 2016, Mr. Thomas's daughter noticed that his hand was severely swollen at his IV site, and he appeared to be in distress. Based on the family's demand, the nursing facility agreed to have Mr. Thomas transported to the hospital. In the early evening of August 29, 2016, the Fort Bend County EMS transported Mr. Thomas to Houston Methodist Sugarland Hospital.

23. Upon his admission into the hospital, Mr. Thomas was evaluated and diagnosed with a Stage IV pressure ulcer of his sacrum that was infected, as well as an infection on his hand and cellulitis. Wound cultures taken at the hospital confirmed that Mr. Thomas's sacral pressure ulcer extended down to his spinal area, and he had developed polymicrobial osteomyelitis, which is a life-threatening infection of the bone. Mr. Thomas underwent numerous surgical

debridements of his wound, as well as placement of a wound vac. Although his physicians recommended that he undergo a plastic surgical procedure known as a "flap surgery," due to the extent of his infection, he was unable to have this treatment performed.

24. Over the next six weeks, Mr. Thomas was transferred numerous times between Windsor Quail Valley and Houston Methodist Sugarland Hospital for treatment of his sacral pressure ulcer, osteomyelitis, infected IV site, and related injuries. Unfortunately, Mr. Thomas's condition continued to deteriorate. On November 4, 2016, Mr. Thomas was transferred to inpatient hospice in the Windsor Quail Valley facility.

25. Mr. Thomas died just a few weeks later, on December 22, 2016. His death certificate lists his immediate cause of death as Alzheimer's dementia with an underlying cause of osteomyelitis from his infected sacral pressure ulcer.

26. Mr. Thomas died as a direct result of the inadequate care and treatment that he received at First Colony and Windsor Quail Valley.

## VI. CAUSES OF ACTION

**COUNT ONE: MEDICAL NEGLIGENCE – SSC MISSOURI OPERATING COMPANY, LLC.**

27. Plaintiffs hereby incorporate and reallege the matters set forth in the preceding paragraphs as if set forth at length.

28. During the relevant period of time, SSC Missouri Operating Company, LLC owned and operated the First Colony Health and Rehabilitation Center and is a health care provider licensed by the State of Texas to provide health care. Defendant provided health care to Decedent, and at all times relevant there existed a physician-patient relationship between Defendant and Decedent. As such Defendant is considered health care institution under the Texas Civil Practice & Remedies Code.

29. Defendant owed Decedent a legal duty of care to act as reasonably prudent health

care providers would act under the same or similar circumstances, including but not limited to exercising that degree of care required by Decedent's known physical and mental condition.

30. Through Defendant's agents, employees and representatives, Defendant breached the applicable standard of care while providing medical care and treatment to Decedent by engaging in numerous improper acts and omissions including but not limited to the following:

a. Failing to properly monitor, evaluate, and re-evaluate Decedent's known physical condition;

b. Failing to properly and timely observe, assess, evaluate, and/or treat Decedent, including but not limited to improperly allowing Decedent to develop severe pressure ulcers, failing to properly treat Decedent's pressure ulcers, failing to ensure that Decedent was properly hydrated and provided sufficient nutrition and food intake, and failing to timely and properly treat Decedent's infections;

c. Failing to create, implement, and monitor an appropriate care plan that took into consideration Decedent's known physical condition and needs;

d. Failing to properly train, monitor, supervise, and oversee its employees, agents, and staff to ensure that pressure ulcer prevention and treatment measures were put into place and that measures to ensure Decedent received proper nutrition and hydration were put into place;

e. Failing to formulate and institute proper policies and procedures for the care and treatment of patients such as Decedent with known medical conditions, and failing to properly train its employees and agents on such policies and procedures;

f. Failing to exercise reasonable care in the selection and maintenance of its medical and nursing staff;

g. Failing to properly supervise its employees, agents, and staff; and

h. Failing to ensure that appropriate levels of staffing and training of staff were provided for the care and treatment of patients, including Decedent, and that sufficient funds were budgeted and expended on staff, training or staff, medical supplies, and medical care and treatment for Decedent.

31. As outlined above, Defendant failed to meet the applicable standards of care that Defendant owed to Decedent, and this failure was a proximate cause of severe damages suffered by Plaintiffs and Decedent.

**COUNT TWO: MEDICAL NEGLIGENCE – REGENCY IHS OF WINDSOR QUAIL VALLEY, LLC.**

32. Plaintiffs hereby incorporate and reallege the matters set forth in the preceding paragraphs as if set forth at length.

33. During the relevant period of time, Regency IHS of Windsor Quail Valley, LLC owned and operated the Windsor Quail Valley Post-Acute Healthcare medical facility and is a health care provider licensed by the State of Texas to provide health care. Defendant provided health care to Decedent, and at all times relevant there existed a physician-patient relationship between Defendant and Decedent. As such Defendant is considered health care institution under the Texas Civil Practice & Remedies Code.

34. Defendant owed Decedent a legal duty of care to act as reasonably prudent health care providers would act under the same or similar circumstances, including but not limited to exercising that degree of care required by Decedent's known physical and mental condition.

35. Through Defendant's agents, employees and representatives, Defendant breached the applicable standard of care while providing medical care and treatment to Decedent by engaging in numerous improper acts and omissions including but not limited to the following:

   a. Failing to properly monitor, evaluate, and re-evaluate Decedent's known physical condition;

   b. Failing to properly and timely observe, assess, evaluate, and/or treat Decedent, including but not limited to improperly allowing Decedent's existing pressure ulcers to worsen and progress into more severe injuries, improperly allowing Decedent to develop a severe Stage IV pressure ulcer, failing to properly treat Decedent's pressure ulcers, failing to ensure that Decedent was properly hydrated and provided sufficient nutrition and food intake, failing to ensure that Decedent's injuries did not become infected, and failing to timely and properly treat Decedent's infections;

   c. Failing to create, implement, and monitor an appropriate care plan that took into consideration Decedent's known physical condition and needs;

   d. Failing to properly train, monitor, supervise, and oversee its employees, agents, and staff to ensure that pressure ulcer prevention and treatment measures were put into place, that measures to ensure proper nutrition and hydration was provided to Decedent, and that measures to evaluate, recognize, and treat Decedent's infections were put into place;

  e. Failing to formulate and institute proper policies and procedures for the care and treatment of patients such as Decedent with known medical conditions, and failing to properly train its employees and agents on such policies and procedures;

  f. Failing to exercise reasonable care in the selection and maintenance of its medical and nursing staff;

  g. Failing to properly supervise its employees, agents, and staff; and

  h. Failing to ensure that appropriate levels of staffing and training of staff were provided for the care and treatment of patients, including Decedent, and that sufficient funds were budgeted and expended on staff, training or staff, medical supplies, and medical care and treatment for Decedent.

36. As outlined above, Defendant failed to meet the applicable standards of care that Defendant owed to Decedent, and this failure was a proximate cause of severe damages suffered by Plaintiffs and Decedent.

**COUNT THREE: MEDICAL NEGLIGENCE – REGENCY INTEGRATED HEALTH SERVICES, LLC.**

37. Plaintiffs hereby incorporate and reallege the matters set forth in the preceding paragraphs as if set forth at length.

38. During the relevant period of time, Regency Integrated Health Services, LLC operated, managed, and/or controlled the various aspects of the Windsor Quail Valley Post-Acute Healthcare medical facility and is a health care provider licensed by the State of Texas to provide health care.  Defendant provided health care to Decedent, and at all times relevant there existed a physician-patient relationship between Defendant and Decedent.  As such Defendant is considered health care institution under the Texas Civil Practice & Remedies Code.

39. Defendant owed Decedent a legal duty of care to act as reasonably prudent health care providers would act under the same or similar circumstances, including but not limited to exercising that degree of care required by Decedent's known physical and mental condition.

40. Through Defendant's agents, employees and representatives, Defendant breached the applicable standard of care while providing medical care and treatment to Decedent by

engaging in numerous improper acts and omissions including but not limited to the following:

- a. Failing to properly train, monitor, supervise, and oversee the nursing staff and other agents and representatives within the facility that were providing medical care to Decedent to ensure that Decedent's pressure ulcers were properly treated, that pressure ulcer prevention and treatment measures were put into place, that measures to ensure proper nutrition and hydration was provided to Decedent, and that measures to evaluate, recognize, and treat Decedent's infections were put into place;

- b. Failing to formulate and institute proper policies and procedures for the care and treatment of residents such as Decedent with known medical conditions, and failing to properly train the facility's employees and agents on such policies and procedures;

- c. Failing to exercise reasonable care in the selection and maintenance of the facility's medical and nursing staff;

- d. Failing to properly supervise the facility's employees, agents, and staff;

- e. Failing to ensure that the facility was administrated in a manner that enabled it to use is resources effectively and efficiently to attain or maintain the highest practical physical, mental, and psychosocial well-being of Decedent and the facility's other residents;

- f. Failing to ensure that appropriate levels of staffing and training of staff were provided for the care and treatment of patients, including Decedent, and that sufficient funds were budgeted and expended on staff, training or staff, medical supplies, and medical care and treatment for Decedent.

41. As outlined above, Defendant failed to meet the applicable standards of care that Defendant owed to Decedent, and this failure was a proximate cause of severe damages suffered by Plaintiffs and Decedent

**COUNT FOUR: VICARIOUS LIABILITY – ALL DEFENDANTS.**

42. Plaintiffs hereby incorporate and reallege the matters set forth in the preceding paragraphs as if set forth at length.

43. Defendants employed, trained, supervised, and/or monitored various medical and nursing staff that provided medical care and treatment to Decedent while he was a resident in Defendants' medical facilities.

44. Defendants are each responsible for the acts and/or omissions of their respective agents, ostensible agents, servants, employees, contractors, and representatives during the care and treatment of Decedent under various theories of vicarious liability, including but not limited to the doctrines of actual authority, apparent authority, *respondeat superior*, and ratification.

45. ***Respondeat Superior*** - At all relevant times, Defendants' agents, employees, and representatives that rendered care and treatment to Decedent were acting within the course and scope of their employment and/or agency with Defendants, in furtherance of Defendants' business, and for the accomplishment of the object for which they were hired and/or employed. Decedent was injured as the result of medical negligence committed by Defendants' respective agents, employees, and representatives that rendered care and treatment to Decedent.

46. ***Actual Authority*** - At all relevant times, Defendants intentionally conferred authority on their agents, intentionally allowed their agents to believe that they had the proper authority, or, through the lack of due care, allowed their agents to believe that they had the proper authority, to act on Defendant's behalf in the care and treatment of Decedent. Decedent was injured as the result of medical negligence committed by Defendants' respective agents, employees, and representatives while acting within the scope of their respective agency with Defendants.

47. ***Apparent Authority*** – At all relevant times, Defendants affirmatively held out their respective agents, employees, and representatives that rendered care and treatment to Decedent as having authority to act on their behalf, knowingly permitted its respective agents, employees, and representatives to hold themselves out as having property authority, or acted with such a lack of ordinary care as to clothe their agents, employees, and representatives with the indicia of authority. Defendants' conduct caused Decedent to believe that Defendants' agents, employees, and representatives had the authority to act on Defendants' behalf, and

Decedent justifiably relied upon Defendants' agents, employees, and representatives' authority.

48.     ***Ratification*** – Defendants are also vicariously liable for the acts and/or omissions of their respective agents, employees, and representatives acting outside the scope of their authority because Decedent was injured by Defendants' agents or non-agents who provided medical care and treatment to Decedent.  Defendants' agents and/or non-agents engaged in improper acts and/or omissions on behalf of Defendants, Defendants approved these acts and omissions by word, act, or conduct after acquiring full knowledge of the alleged acts and/or omissions, and Defendants gave approval with the intention of giving validity to the acts and/or omissions of their agents, employees, and representatives.

## VII.  DAMAGES

49.     Plaintiffs hereby incorporate and reallege the matters set forth in the preceding paragraphs as if set forth at length.

50.     Defendants' breach of duty proximately caused injuries to Plaintiffs and Decedent, which resulted in the following damages to Plaintiffs and the Estate of Decedent:

**Wrongful-Death Action Damages**

a.   Mental anguish in the past and future;
b.   Loss of companionship and society in the past and future;
c.   Pecuniary losses;
d.   Loss of household services in the past and future;
e.   Loss of companionship and society;
f.   Loss of inheritance; and
g.   Funeral expense reimbursement.

**Survival Action Damages**

a.   Pain and suffering of Decedent;
b.   Mental anguish of Decedent;
c.   Physical impairment of Decedent;
d.   Past medical expenses incurred for Decedent's treatment; and
e.   Funeral expenses incurred by Decedent's estate.

## VIII.  EXEMPLARY DAMAGES

51. Plaintiffs hereby incorporate and reallege the matters set forth in the preceding paragraphs as if set forth at length.

52. As outlined above, Defendants' acts and omissions constitute conscious disregard for the safety and welfare of their patients, including Decedent. With actual notice of Decedent's physical condition and medical needs, Defendants failed to exercise even the basic level of proper care, failed to ensure that adequate and properly trained staff treated and monitored Decedent, and failed to ensure that sufficient funds were allocated and expended on staffing and care of patients such as Decedent. In short, Defendants placed profits over patients. Defendants' conscious disregard for patients and their decision to place profits over their patients resulted in severe injuries to Decedent.

53. Because Defendants' actions were fraudulent, malicious, and/or grossly negligent, Plaintiffs request that exemplary damages be awarded against Defendants in a sum within the jurisdictional limits of the Court.

## IX. DEMAND FOR JURY TRIAL

54. Plaintiffs demand a trial by jury and have paid the appropriate fee.

## XI. CONDITIONS PRECEDENT

55. Plaintiffs have fully performed all conditions precedent to this action, including but not limited to providing Defendants with written notice of Plaintiffs' claims.

## XII. REQUEST FOR RELIEF AND PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs FRANKIE THOMAS, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF FRANK THOMAS, SR., DECEASED, ANTHONY THOMAS, KARLIE DENNIS, EDITH THOMAS NEVEAUX, and KERRY THOMAS respectfully request and pray Defendants SSC MISSOURI CITY OPERATING COMPANY, LLC, REGENCY IHS OF WINDSOR QUAIL VALLEY, LLC, and

REGENCY INTEGRATED HEALTH SERVICES, LLC be cited to appear and answer, and that on final trial, Plaintiffs have judgment against Defendants, jointly and severally, for the following:

a. An award of Plaintiffs' actual and special personal injury and economic damages within the jurisdictional limits of the Court, including but not limited to the compensatory and consequential damages pleaded herein;

b. Costs of Court;

c. Pre-judgment and post-judgment interest at the highest rate(s) allowed by law;

d. Statutory damages allowed by law, within the jurisdictional limits of the Court;

e. Exemplary damages, within the jurisdictional limits of the Court;

f. Mental anguish damages; and

g. Such other and further relief, at law or in equity, to which Plaintiffs may be entitled and which this Court deems just and fair.

Respectfully submitted,

By: */s/ Patrick W. Powers*
Patrick W. Powers – Attorney in charge
State Bar No. 24013351
S.D. Tex. Bar No. 24520
patrick@powerstaylor.com
8150 North Central Expressway, Suite 1575
Dallas, Texas 75206
214-239-8900 – Office
214-239-8901 – Fax

**OF COUNSEL:**
Gabriel Canto
State Bar No. 24091638
gabriel@powerstaylor.com

**POWERS TAYLOR LLP**
8150 North Central Expressway, Suite 1575
Dallas, Texas 75206
214-239-8900 – Office
214-239-8901 – Fax

**ATTORNEYS FOR PLAINTIFFS**